NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DONNA LAYDEN, | : |
| Plaintiff, | : Civil Action No. 15-3467 (BRM)(LHG) |
| v. | : **OPINION** |
| TARGET CORPORATION, et al., | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Target Corporation's ("Defendant") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 26.) Plaintiff Donna Layden ("Layden") opposes the motion. (ECF No. 27.) Pursuant to Federal Rules of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

I.   **FACTUAL BACKGROUND**

Layden was a customer at Defendant's retail store ("Target") in Middletown, New Jersey on April 7, 2014,[1] where she alleges she slipped on a piece of plastic and fell. (Compl. (ECF No. 1-1) ¶ 1; D.'s Statement of Material Facts in Supp. of Mot. for Summ. J. (ECF No. 26-1) ¶¶ 1, 8; ECF No. 27 ¶¶ 1, 8.) Layden claims Defendant "negligently and carelessly failed to make proper and timely inspections," which caused her to trip and sustain serious personal injuries. (ECF No.

---

[1] Although the Complaint indicates that Layden was at Defendant's store on April 8, 2014, both Layden and Defendant agree the alleged incident occurred on April 7, 2014. (Def.'s Statement of Material Facts (ECF No. 26-1) ¶ 1; Pl.'s Statement of Material Facts (ECF No. 27) ¶ 1.)

1-1 ¶ 5.) Specifically, Layden claims "trash, debris and other items including plastic hangers" were allowed to remain on the floor "after a period of time that would reasonably" give Defendant notice of a slip and fall hazard. (*Id.* ¶ 3.)

Layden contests several issues of fact asserted by Defendant and challenges the credibility of Defendant's witnesses. While the Court ultimately finds there is no genuine issue for trial as to any of the material facts, the Court addresses Layden's challenges below and draws all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment); *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" (quoting *Anderson*, 477 U.S. at 255).)

### A. Layden's Alleged Incident

On April 7, 2014, at 12:30 p.m., Layden allegedly slipped on a piece of plastic and fell in Defendant's store. (ECF No. 26-1 ¶¶ 1, 8; ECF No. 27 ¶¶ 1, 8.) Layden testified:

> I picked [a comforter] up and put it into the cart and walked over to the scanner that was on the main aisle on the pillar pole and I went to go lift the comforter out of the cart and my foot slipped out from under me and I went down.

(Layden Dep.[2] at Tr. 39:19-21.) Layden did not see anything on the ground before she fell but observed a "piece of small plastic hanger" on the floor while she was laying on the ground. (*Id.* at Tr. 50:7-17, 79:21-23). She claims to have seen only two employees and no other guests in the store that day. (*Id.* at Tr. 48:9-12.) Nevertheless, she did not report the incident until the next day.

---

[2] Various transcript excerpts are provided at ECF Nos. 26-2 and 27-2 and will be uniformly cited as "Layden Dep."

2

*See infra*, Section I. C. ("Reporting the Incident"). The fall injured Layden's right shoulder. (*Id.* at Tr. 86:14-25; ECF No. 26-1 ¶ 26; ECF No. 27 ¶ 26.)

### B. The Object in Question

The parties dispute what, if anything, Layden slipped on. Although Layden testified to seeing a "piece of small plastic hanger" on the floor after she fell, she did not pick it up after she fell. (ECF No. 26-1 ¶¶ 31-32; ECF No. 27 ¶¶ 31-32.) Instead, in the week following the incident, Layden's daughter-in-law, Lori Conklin ("Conklin"), went to Target, picked up a piece of plastic hanger from the floor, and gave it to Layden. (Layden Dep. at Tr. 51:1-7.) While Layden testified she did not ask Conklin to retrieve a piece of plastic from the store, Conklin testified Layden did make such a request of her. (ECF No. 26-1 ¶¶ 35, 41-42, 45; ECF No. 27 ¶¶ 35, 41-42, 45.) Months later, Conklin "returned [to the store] to look for a white piece [of plastic hanger]," retrieved "[a] little white hooked hanger," and also "gave it to [Layden]." (Conklin Dep. (ECF No. 26-3, Ex. H) at Tr. 25:14, 29:1-4.) Conklin eventually conceded the "hangers" she produced were not from the floor but were holding up pieces of merchandise on the wall. (*Id.* at Tr. 22:14, 28:17-29:4.)

At her deposition, Layden could not identify whether the piece presented to her was the one that caused her fall, but stated it was "something like it." (Layden Dep. at Tr. 53:11, 54:18-21; ECF No. 26-1 ¶ 59-61; ECF No. 27 ¶¶ 59-61.) She produced a photograph of a piece of plastic similar to the one on which she slipped (ECF No. 26-1 ¶¶ 37, 61; ECF No. 27 ¶¶ 37, 61), but Defendant denies using it in its store at the time of the incident. (ECF No. 26-3, Ex. J; ECF No. 26-1 ¶¶ 62-63, 100-02.)

Further, Layden argues, based on the employee's handling of the hangers, a reasonable jury could infer Defendant's liability. Before the store opens, an overnight crew restocks the merchandise, and an outside contractor cleans the floor after the overnight crew completes their work. (ECF No. 26-1 ¶¶ 95-98; ECF No. 27 ¶¶ 95-98.) When merchandise arrives at the store, it

comes pre-hung on hangers, but the employees "take them off when we put the merchandise on the racks." (DeMarco Dep.[3] at Tr. 24:20-25:1.)

Defendant argues this statement (and all testimony regarding "hangers") is irrelevant and misleading, because Layden ultimately testified, as discussed above, that she saw a small hooked-shaped piece of plastic on the ground. (ECF No. 28 at 3.) Defendant claims employees do not place, replace, or remove any hangers or hooks on the merchandise and the merchandise is pre-hung and attached to the hangers when it arrives to the store. (ECF No. 26-1 ¶¶ 85-87.) Defendant also contends customers leave the store with the hangers attached to the merchandise, along with the price tag, when they purchase the product. (ECF No. 26-1 ¶¶ 88-91.)

### C.     Reporting the Incident

Layden did not report the incident until the following day on April 8, 2014, at which time, a Guest Incident Report ("Incident Report") (ECF No. 26-2, Ex. B) and Investigation Report (ECF No. 26-2, Ex. C) were prepared by Donna DeMarco ("DeMarco"),[4] a Target employee and executive team leader, responsible for day-to-day operations on the sales floor. (DeMarco Dep. at Tr. 8:3-6, 20-24; ECF No. 26-1 ¶¶ 2, 64, 72; ECF No. 27 ¶¶ 2, 64, 72.). According to the Incident Report, Layden was at the "[s]canner in HBA/Paper Area-A39" when she "stepped on something and it scooted out from under [her] foot." (ECF No. 26-2, Ex. B.) The Incident Report states: (1) the cause of Layden's fall was an "unknown object (tiny) on the floor"; (2) it was "unknown at the time" whether "the floor/ground [was] clean and dry"; and (3) a "tiny piece of plastic" was

---

[3] Various transcript excerpts are provided at ECF Nos. 26-3, Ex. K and 27-3.

[4] In the Guest Incident Report and throughout the briefing, both parties refer to "Diana DeMarco" and/or "Ms. DiMarco." On May 18, 2016, the parties took Donna DeMarco's deposition, and the Court finds no reason to believe, nor do the parties contend, the references relate to anyone other than her.

involved. (*Id.*; ECF No. 26-1 ¶¶ 5-6, 24; ECF No. 27 ¶¶ 5-6, 24.) In the Investigation Report, DeMarco indicated she could not "determine the source of the substance or condition" because the "[r]eport [was] taken 1 day later – object gone." (ECF No. 26-2, Ex. C.) Layden's signature appears at the bottom of the Incident Report. (ECF No. 26-2, Ex. B.)

Layden challenges DeMarco's credibility and reliability as to what she reported. (ECF No. 26-1 ¶¶ 10-12; ECF No. 27 ¶¶ 10-12.) Layden claims DeMarco "did not inspect the area where [she] fell and . . . it is likely that she failed to inspect the accident site and only testified as such to protect her job." (ECF No. 27 ¶¶ 11-12.) Layden further challenges DeMarco's testimony regarding how long, if at all, the object was on the floor, and whether Defendant's employees were aware of it. DeMarco testified, on the day of the incident, Defendant had safety procedures in place and that every team member was responsible for customer safety. (DeMarco Dep. at Tr. 13:9-11 and 16:9-12.) She also testified team leaders, designated as Leaders on Duty ("LODs"), were required to walk the sales floor at least once an hour, help guests, monitor team members, inspect floors, and make sure the store was safe. (DeMarco Dep. at Tr. 17:4-18:3.) The LOD would have been advised if someone in the store fell. (ECF No. 26-1 ¶ 104; ECF No. 27 ¶ 104.)

Stephanie Lembke ("Lembke") was the LOD on the day of the incident and claims she was not made aware of anyone falling near the scanner at the time of the incident. (ECF No. 26-1 ¶¶ 81-82, 103; ECF No. 27 ¶¶ 81-82, 103.) Lembke received safety training and acknowledged her responsibility to address any guest or safety issues in the building while on duty, including picking things up from the floor. (ECF No. 26-1 ¶¶ 83-84, 92, 99; ECF No. 27 ¶¶ 83-84.) Layden also questions Lembke's credibility and disputes whether each employee fulfilled their obligations to ensure customer safety. (ECF No. 27 ¶¶ 92-93, 99.)

The day after the incident, DeMarco viewed an hour and half of videotape surveillance,

along with Michael Triolo ("Triolo"), a former executive team leader of asset protection for Target. (ECF No. 26-1 ¶¶ 71, 108-10.) They did not observe anyone falling near the scanner (*id.*), but Layden argues Triolo and DeMarco failed to view footage of the location where the fall occurred (ECF No. 27 ¶¶ 71, 108-10). The parties dispute whether the incident occurred by the scanner in the main aisle in front of the building across from the household appliance products, as alleged by Defendant based on the Incident Report, or in the main aisle near the scanner by the bedding section, as alleged by Layden in her opposition to her Motion. (ECF No. 26-1 ¶¶ 65-70; ECF No. 27 ¶¶ 65-70.) Significantly, but without making any findings of fact, a review of the record indicates the parties may be referring to the same scanner. However, to the extent the facts are in dispute, the Court notes Layden's argument—that the accident happened by a scanner other than the one noted in the Incident Report and viewed by Defendant the next day—is not expressly supported by the portion of the record she repeatedly cites.[5]

---

[5] In opposition to the Motion, Layden argues she "told [] DiMarco that she fell in the main aisle near the scanner by the bedding section," relying her own deposition testimony, as well as the deposition testimony of Lembke. However, the cited portion of Layden's testimony states only:

> Q: Did [DiMarco] ask you any questions?
> A: Yes, like what happened and I told her.
> Q: What did you tell her?
> A: I told her that I was getting a comforter, brought it up to the scanner and my foot slipped out from under me and I fell.

(Layden Dep. at Tr. 73:14-19.) Earlier in the deposition, but not cited directly by Layden, she testified "she walked over to the scanner that was on the main aisle on the pillar pole." (*Id.* at Tr. 39:17-19.) Lembke's testimony, as cited by Layden, states DiMarco told her the incident "happened down by produce," which Lembke states is part of the "hard lines" department. Lembke further testified that department includes "[a]ll of your bedding. All of your HBA. That's your health and beauty products. Anything food related. So all the grocery and produce, as well as, electronics, toys, and seasonal." (Lembke Dep., 60:21 – 61:17.)

When read together, Lembke's testimony reconciles Layden's argument with the Incident Report, filled out by DiMarco but signed by Layden, which states the incident occurred by the "[s]canner in HBA/Paper Area-A39." (ECF No. 26-2, Ex. B.) DiMarco testified, at the time of the

## II. PROCEDURAL HISTORY

Layden initiated this action in the Superior Court of New Jersey, seeking to recover money damages for injuries suffered after she slipped and fell in Defendant's retail store on April 7, 2014. (ECF No. 1-1.) The action was brought against Defendant and Nu-Rose Realty, the leasing company for Defendant's retail store. (*Id.* ¶ 2.) Defendant removed the action to the District Court of New Jersey, claiming diversity among the parties afforded federal jurisdiction. (ECF No. 1.) In response, Layden moved to remand, alleging lack of subject matter jurisdiction because Nu-Rose Realty, the New Jersey property owner, defeated diversity. (ECF No. 5.) Following oral argument on July 23, 2015, the Court denied Layden's motion and ordered the parties to complete limited discovery to the applicability of the leasing company as it pertains to jurisdictional issues. (ECF No. 7; ECF No. 8.) The Court also ordered the parties to depose a corporate representative of Defendant who is familiar with the ground lease and the relationship between Defendant and Nu-Rose Realty. (ECF No. 7.) Layden subsequently withdrew her motion for remand, this Court retained jurisdiction, and the parties continued with discovery. (ECF No. 13.) On March 8, 2017, the action was brought before an arbitrator, who found in Layden's favor. (ECF No. 24.) Defendant rejected the arbitrator's finding and requested a trial *de novo* pursuant to Local Rule 201.1(h) (ECF No. 25) and this Motion followed.

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

incident, there was only one scanner in that area. (DiMarco Dep. at Tr. 35:3-12.) Due to the wide-range of products in that area, it is possible the parties are all referring to the same HBA/Paper Area scanner, which seems to be located near both bedding and household appliances.

7

of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475

U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### IV. DECISION

Defendant moves for summary judgment, arguing Layden cannot prove negligence because she cannot establish what caused her to fall. (D.'s Br. in Supp. of its Mot. for Summ. J. (ECF No. 26-4) at 10.) Defendant further argues Layden cannot prove whether Defendant "had actual or constructive notice of a dangerous condition that caused the accident." (*Id*. at 11.) Finally, Defendant contends the mode of operation rule, which Layden asserts is applicable to this case, does not apply because the rule is limited to "self-service business settings such as [those] where customers handle the product themselves and the accident occurs in areas affected by the business' self-service operations, which [here] was not at issue." (*Id*. at 12.)

In response, Layden argues a "reasonable juror could conclude that an employee [of Defendant] removing hangers before customers arrived dropped a hanger on the floor and failed to discover it in the five and a half hours before the accident." (ECF No. 27 at 28.) Layden further

9

maintains the injuries she sustained were caused by Defendant's employees and, therefore, "[P]laintiff need not show actual or constructive notice because the condition was created by [Defendant] or its employees." (*Id*. at 21.) Finally, Layden argues the mode of operation rule applies because the injury occurred in the self-service setting of Defendant's business. (*Id*. at 22.)

Ultimately, the parties dispute two issues. First, the parties disagree over the negligence standard to be applied and whether Layden needs to establish Defendant's notice. Second, based on the applicable standard, the parties disagree as to whether a genuine issue exists for trial. Defendant argues Layden lacks sufficient evidence to prove negligence. Layden challenges the credibility of Defendant's witnesses and contends a reasonable jury could find in her favor. The Court will address both disputes as it analyzes the parties' shifting burdens, as required on a summary judgment motion.

### A. Defendant's Burden

The Court finds Defendant has sufficiently met its Rule 56 burden to show entitlement to summary judgment because it has adequately "inform[ed] the district court of the basis for its motion, and identif[ied] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323. Specifically, Defendant states: (1) Layden cannot identify what object, if anything, was on the floor and caused her to fall; (2) she did not report the accident until the next day; and (3) there were no witnesses to and is no video of the accident. Consequently, Defendant contends Layden cannot prove actual or constructive notice. By arguing there does not exist "sufficient evidentiary basis on which a reasonable jury could find for [Layden]," *see Kaucher*, 455 F.3d at 423 (defining a genuine factual dispute), Defendant sufficiently demonstrates, for the purpose of meeting its initial burden, the

absence of a genuine issue of material fact.[6]

### B. Layden's Burden

Having found Defendant adequately supported its Motion, the burden shifts to Layden to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Layden fails to meet this burden. In opposition to the Motion, she states, in one conclusory sentence, "It is respectfully submitted that the proofs, both direct and circumstantial, offered in this matter, together with the legitimate inferences in the plaintiff's favor, would allow a jury to reasonably determine that the defendants are negligent." (ECF No. 27 at 20.) This falls short of designating for the Court "specific facts showing that there is a genuine issue for trial."[7]

Nevertheless, she additionally argues: (1) mode of operation is applicable because customers do not have access to the hanger that caused the plaintiff's fall; and (2) the plaintiff is entitled to an adverse inference that the lost surveillance video showing the accident site prior to the accident would likely have been beneficial to the plaintiff. The Court will address Layden's arguments and discuss the negligence standard, but ultimately finds plaintiff's insufficient

---

[6] Layden additionally argues Defendant had a "summary judgment burden" to "demonstrate that notice to the Defendant was unnecessary because Defendant caused the danger." The Court is not persuaded, nor is it clear from Layden's brief why Defendant would be required to meets this "burden." Further, Layden's Opposition raising these arguments assumes several unsupported allegations. To the extent Layden intends to argue she does not have to prove notice to Defendant, that is addressed *infra*.

[7] Even reading this statement in conjunction with her Counterstatement of Facts and Statement of the Case, Layden does not meet her burden. The Statement of the Case is full of conclusory legal arguments and does not provide a single citation to specific supporting evidence. (*See generally, id.* at 2-3.) The Counterstatement of Facts includes citations, but the cited portion of the record often does not accurately or fully support the intended proposition, and many of Layden's challenges to Defendant's Statement of Facts are based on improper challenges to the witnesses' credibility. (*See generally, id.* at 3-17.)

evidence in fatal to her case, because she cannot meet her burden of production at trial.

      **C.**      **Negligence**

To prove her negligence claim under New Jersey law, Layden "must establish that [D]efendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990). A storekeeper owes his patrons a duty to "guard against any dangerous conditions on [the] property that the owner either knows about or should have discovered[,] . . . [and] to conduct a reasonable inspection to discover latent dangerous conditions." *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 691 (N.J. 2010) (citing *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993)). In the absence of an exception, a storekeeper is generally not held liable for injuries when there is "no actual or implied knowledge or notice, and no reasonable opportunity to discover" the dangerous condition on the premises. *Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 30 (N.J. 1984). The plaintiff, therefore, bears the burden of proving "that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003). Constructive knowledge is established when the dangerous condition "existed for such a length of time that [the defendant] should have known of its presence." *Prioleau v. Kentucky Fried Chicken, Inc.*, 85 A.3d 1015, 1022 (N.J. Super. Ct. App. Div. 2014), *aff'd*, 122 A.3d 328 (N.J. 2015) (quoting *Bozza v. Vornado, Inc.*, 200 A.2d 777, 779 (N.J. 1964)).

Layden argues there are two applicable exceptions to the requirement that plaintiffs establish actual or constructive knowledge: (1) the mode of operation rule, and (2) when the defendant caused the condition that led to injury. Layden asserts Defendant's Motion relies on her alleged inability to prove this element and therefore should be denied because she does not need to prove notice as an element of her claim.

First, Layden argues New Jersey's mode of operation rule affords an inference of

negligence where, "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business." *Nisivoccia*, 818 A.2d at 316, 318. "This inference relieves the plaintiff of proving that the defendant had actual or constructive notice of the dangerous condition and instead requires the defendant to show that it did 'all that a reasonably prudent man would do in light of the risk of injury [the mode of operation] entailed.'" *Valentin v. Toys R Us, Inc.*, No. A-3326-07T3, 2010 WL 3075749, at *2 (N.J. Super. Ct. App. Div. July 15, 2010) (quoting *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 515 (N.J. 1966)); *see also Nisivoccia*, 818 A.2d at 317 ("[W]e held that when it is the nature of the business that creates the hazard, the inference of negligence thus raised shifts the burden to the defendant to 'negate the inference by submitting evidence of due care.'" (quoting *Bozza*, 200 A.2d at 780)).

However, in order to benefit from this inference, a plaintiff must "establish a connection between the allegedly dangerous business practice and the identified cause of the plaintiff's injuries." *Kelly v. Ruby Tuesday Rest.*, No. Civ. A. 12-2034, 2013 WL 4731812, at *3 (D.N.J. Sept. 3, 2013). *See Cashour v. Dover Parkade, LLC*, No. A-4241-11T2, 2013 WL 560914, *6 (N.J. Super. Ct. App. Div. Feb. 15, 2013) (finding prior mode of operation cases "all involved a direct causal link between the object slipped on and its known source, the latter originating in a particular circumstance, manner or method by which defendant operated its business"). "An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Long v. Landy*, 171 A.2d 1, 7 (N.J. 1961); *Prioleau*, 85 A.3d at 1027 ("Mode-of-operation liability does not apply merely because defendants operated a fast food restaurant. Rather, plaintiff must establish a causal nexus between the fast food or other business operation and the harm causing her injuries.").

Next, Layden argues she does not need to demonstrate actual or constructive knowledge

13

because Defendant caused the condition and is therefore charged with knowledge of it. (ECF No. 27 at 21 (citing Model Jury Charge (Civil) 5.20F9).) According to Layden, the dangerous condition was a plastic hanger removed by the employees and, although "[t]he hangers are supposed to be placed in the garbage[,] . . . [DiMarco's] testimony in and of itself would allow a rational factfinder to infer that that [sic] employee negligently dropped a portion of the hanger on the floor leading to [] Layden's accident. (ECF No. 27 at 22.)

### D. Insufficient Evidence

At this stage, the Court cannot weigh any evidence, decide the truth of specific matters, or make credibility determinations. *Anderson*, 477 U.S. at 249; *Big Apple BMW,* 974 F.2d at 1363. And while the Court must make all justifiable inferences in Layden's favor, that standard is not limitless. The Court's role at this stage is to determine whether there is a genuine issue for trial, *Anderson*, 477 U.S. at 249, and "no genuine issue as to any material fact" can exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. Layden is unable to produce sufficient evidence to establish a causal nexus between the mode of Defendant's operations (or the alleged dangerous condition) and her injuries. Accordingly, the Court finds neither exception applies.

Most glaringly, Layden "cannot clearly identify the [object] that caused her fall," and "without a clear description of what this [object] was and how it ended up [on the floor], it cannot be connected to [D]efendant's mode of operation." *See Anderson v. Stop & Shop Supermarket Co.*, L.L.C., No. A-4060-14T2, 2016 WL 6518597, at *3 (N.J. Super. Ct. App. Div. Nov. 3, 2016). In *Prioleau*, the Appellate Division reversed the trial court's application of the mode of operation, finding the jury charge "unfounded and erroneous," where "there was no evidence the [fast food] restaurant's floor was ill-kept, strewn with debris or laden with overflowing trash" and plaintiff

"possibly" slipped on grease. 85 A.3d at 1027. The court refused to expand the mode-of-operation rule of all self-servicing facilities absent evidence the "plaintiff suffer[ed] injury because the mode or manner of the business operation create[d] the dangerous condition on the premises." *Id.* at 1027-28. ("To trigger mode-of-operation liability, a plaintiff must identify facts showing a nexus between the method or manner in which the business is operated when extending products or services to the public, and the harm alleged to have caused the plaintiff's injury.")

Layden argues she is entitled to an inference of negligence because the bedding section is a self-service area and patrons' carelessness in handling merchandise is to be anticipated. The Court is unwilling to find Defendant "engaged in a 'mode-of-operation' that created the kind of systemic, foreseeable risk of harm that obviates the need for plaintiff to establish actual or constructive notice," *see Kelly*, No. Civ. A. 12-2034, 2013 WL 4731812, at *4, particularly where Layden cannot specifically identify the object on which she fell. Confusingly, in attempting to cite the record, and to the extent she relies on more than conclusory statements, Layden conflates the evidence regarding hangers and hooks. For example, Layden argues the dangerous condition was a "plastic hanger" and "[t]he hangers are supposed to be placed in the garbage but that testimony in and of itself would allow a rational factfinder to infer that that an employee negligently dropped a portion of the hanger on the floor leading to Ms. Layden's accident." Not only does this argument (and the testimony by DiMarco on which Layden relies) refer to hangers, the Court does not find the evidence supports such an inference. Layden fails to identify any dangerous business practice in which Defendant improperly handled the hooked-shaped plastic alleged to cause her injury. *See Kelly*, No. Civ. A. 12-2034, 2013 WL 4731812, at *3. Layden merely offers speculative testimony without any evidentiary support as to the object or its source. The Court does not find sufficient evidence exists to infer that, on the day of Layden's fall, employees handled the hangers, missed

the garbage, and caused the hangers to fall on the ground, such that a plastic hook—which the employees did not touch and Layden has yet to specifically identify—ended up on the floor near a scanner.

Moreover, Layden did not report seeing the object before she fell, did not produce the alleged object that caused her fall, and did not report the accident until the next day. (Layden Dep. at Tr. 50:4-6, 55:23-25, 79:21-23; ECF No. 26-1 ¶ 9; ECF No. 27 ¶ 9.) When Layden reported the incident on the following day, she claimed to not have seen what caused her fall. (Layden Dep. at Tr. 79:21-23.) Indeed, in the Incident Report,[8] Layden only references an "unknown object (tiny) on the floor," and claimed a "tiny piece of plastic" was involved. (ECF No. 26-2; ECF No. 26-1 ¶¶ 5-6, 24; ECF No. 27 ¶¶ 5-6, 24); *see Cordasco v. Walgreen Co.*, No. A-1636-10T3, 2011 WL 5118996, at *3 (N.J. Super. Ct. App. Div. Oct. 31, 2011) (affirming summary judgment in favor of the defendant because "there is no evidence whatsoever that the self-service bins contained open bags or containers, that there was any waxy-like substance or carbon-type material in the bins, or that the substance on the floor came from the bins or the merchandise in the bins"). In her Complaint, Layden specifies she slipped and fell on a piece of plastic hanger. However, when Conklin returned to the store to retrieve a plastic hanger, Layden could not identify whether the piece presented to her was the piece that caused her fall, simply stating it was "something like it." (Layden Dep. at Tr. 53:11, 54:18-21; ECF No. 26-1 ¶ 59-61; ECF No. 27 ¶¶ 59-61); *see Cashour*, 2013 WL 560914, *6 (granting summary judgment in favor of the defendant because the plaintiff "provided no proof whatsoever as to the source of the substance," but merely alleged to have

---

[8] Layden challenges DiMarco's credibility in order to attack the Incident Report. For example, Layden argues DiMarco wrote down the wrong accident location in order to save her job. While the disputed issue of where the accident took place may, in other cases, be grounds to deny a summary judgment motion, the dispute here is neither genuine nor material. The Incident Report is signed by Layden, and she does not dispute its contents.

slipped on a shopping bag because "she saw 'something white' on her foot").

Further, Layden concedes to leaving the store without notifying any of the store's employees after she allegedly fell. (Layden Dep. at Tr. 49:20-50:6.) Indeed, Layden cannot produce any witnesses to the incident, as she saw no other customers when she was in the store and did not report the incident. (ECF No. 26-1 ¶¶ 2, 28-32; ECF No. 27 ¶¶ 2, 28-32); *cf. Valentin*, 2010 WL 3075749, at *3 (finding although the plaintiff could not identify the substance, she presented witnesses who testified to seeing her slip and a store employee cleaning up the spill); *Balsamide v. Wal-Mart Stores, Inc.*, No. 06-5676, 2011 WL 2148381, at *4 (D.N.J. May 31, 2011) (finding the plaintiff met his burden even though she could not identify the source of the oil that caused the fall, but presented witnesses who saw the oil on the floor). Both parties even agree the LOD at the time of the incident, Lembke, would have "absolutely" been advised if someone fell. (ECF No. 26-1 ¶ 104; ECF No. 27 ¶ 104); *see McCracken v. Target Corp.*, No. 09-4816, 2011 WL 1466075, at *5 (D.N.J. Apr. 18, 2011) (finding enough evidence to create an inference of negligence sufficient to survive summary judgment because "although the parties dispute when the spill occurred, the evidence proves that spilt mouthwash caused [p]laintiff's fall").

Layden was unable to produce any video evidence of her falling or produce, at the minimum, footage of her at the store on the day of the incident. *See Hicks v. Target Corp.*, No. 10-3116, 2011 WL 6825996, at *3 (D.N.J. Dec. 28, 2011) (finding sufficient evidence, including photographs submitted by both parties, where "a dangerous condition is likely to occur as a result of the presence of clear liquid on the floor"); *Romeo v. Harrah's Atl. City Propco, LLC*, 168 F. Supp. 3d 726, 731 (D.N.J. 2016) (finding genuine issue of material fact where there was "video surveillance of the area and the fact that [a casino supervisor] was in the area during the existence of the spill"). Layden indicated in the incident report to have fallen near the scanner at the main

aisle. (Incident Report, ECF No. 26-2, Ex. B.) At the time of the incident, there was only one scanner at the main aisle. (DeMarco Dep. at Tr. 35:3-17.) The video surveillance would have captured footage of a customer falling near that section of the store. (*Id.* at Tr. 35:3-23.) Triolo and DeMarco testified to viewing the video surveillance at the time of the alleged incident, but claim to have not seen anyone fall near the scanner. (*Id.* at Tr. 36:5-6).

Layden argues Defendant's failure to produce footage was spoliation of evidence and adverse inference should be drawn. (ECF 27 at 29-30.) Specifically, Layden disputes the correct location of the fall and questions DeMarco's and Triolo's credibility, alleging DeMarco "likely fabricated [the] information because she told [] Triolo the wrong location of the accident and the surveillance footage is erased after thirty days." (ECF No. 27 ¶ 67.) Layden acknowledges, however, Defendant's company policy was to maintain surveillance footage for thirty days, unless a request is made to preserve the footage prior to the thirty-day period. (ECF No. 27 ¶ 2.) Because the accident occurred on April 7, 2014, and Layden's attorney requested preservation of the footage on May 19, 2014, the thirty-day period lapsed and the footage was erased. According to the Third Circuit "no unfavorable inference arises when the circumstances indicate that the document or article in question have been lost or accidentally destroyed." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983). Accordingly, Layden's spoliation inference is without merit.

To the extent Layden produced a photograph of a hook as evidence, the plastic hook in the photograph was not a hook that Defendant used, or even the exact one Layden alleges she slipped on, but rather "a photograph of a plastic piece similar to the piece that [Layden] slipped on." (ECF No. 26-3, Ex. I.) Indeed, Defendant claims the store did not used the type of hanger depicted in Layden's photograph at the time of the alleged incident. (ECF No. 26-1 ¶¶ 61-63; ECF No. 27 ¶¶

61-63.) Layden testified the plastic hanger was white (Layden's Dep., ECF No. 26-2 at Tr. 54:12-14), but Defendant produced an affidavit from Senior Team Leader for the softlines department, Lisa Lindgren, stating "Target Corporation did not use plastic pieces as depicted in [Layden's] photographs . . . [and the plastic piece in the] photographs are different in size and color from the ones in use by Target on April 7, 2014." (Def.'s Br., Aff. of Lisa Lindgren, ECF No. 26-3.) At deposition, Triolo referenced additional differences between the hangers other than color, including the hanger's shape. (ECF No. 27-4 at Tr. 46:4-14, 47:9-48:5.) He described Target's hangers as more rounded on the top side, whereas the hangers Layden produced were sharper. (*Id.* at Tr. 50:4-20.) Lembke also stated the store did not use white, but clear plastic hangers. (*Id.* at 73:11-20.) Accordingly, Layden has not presented sufficient evidence to show a causal link between any alleged mode of operation and any alleged object causing Layden's injury or demonstrated that a dangerous condition existed.

A plaintiff cannot survive summary judgment simply by asserting the jury might disbelieve the testimony of defendant's witnesses. *Schoonejongen v. Curtiss Wright*, 143 F.3d 120, 130 (3d Cir. 1998); *Hozier v. Midwest Fastener, Inc.*, 908 F.2d 1155, 1165 (3d Cir. 1990); *Williams v. Borough of West Chester. P.A.*, 891 F.2d 458, 460 (3d Cir. 1989). While "certain scenarios may arise where a material fact cannot be resolved without weighing the credibility of a particular witness or individual," those situations are limited to "'[w]here an issue of material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Schoonejongen*, 143 F.3d at 130 (quoting Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)). In those cases, "there is a sufficient quantum of evidence on either side for reasonable minds to differ," the dispute is "genuine," and "summary judgment is inappropriate." *Id.* The Court is not faced with this issue, nor does Layden allege as much, because no material

facts—*i.e.*, facts that have the ability to "affect the outcome of the suit under governing law" *Kaucher*, 455 F.3d at 423—are in dispute that must be resolved by observing a particular witness. Layden's primary argument is that DiMarco lied about the location of the accident to protect her job. This is immaterial, because Layden, who has the burden of production at trial, cannot prove her *prima facie* case, and Layden's failure to provide proof of an essential element of her case "necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

"[S]ummary judgment is appropriate where no reasonable jury could find that the plaintiff's injuries have been proximately caused by the defendant's conduct." *Thompson*, 2007 WL 1598616, at *3. Defendant satisfied its summary judgment burden and Layden failed to provide a sufficient evidentiary basis for her claim. "The ultimate burden of persuasion remains, of course, with the plaintiff," *Nisivoccia*, 818 A.2d at 318, and she has not directed the Court to any disputed fact that would change the outcome of the case or provide a genuine issue of fact for the jury. Layden relies on conclusory legal arguments and circumstantial evidence to support her assertion that a reasonable jury could construe the facts in her favor. Accordingly, a jury could not find a reasonable basis for the conclusion that the conduct of Defendant was causal linked in any way to Layden's injury.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate Order will follow.

**Date: June 25, 2018**                                         */s/ Brian R. Martinotti*
                                                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                                                  UNITED STATES DISTRICT JUDGE